IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHIRLEY D. DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:07-cv-496-ID |
| ) | |
| CITY OF MONTGOMERY, ) | (WO) |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Shirley D. Dean brings this action against the City of Montgomery alleging sexual harassment and retaliation while employed as a corrections officer at the Montgomery Municipal Jail. Dean claims that she was sexually harassed by Calvin Knight, a fellow corrections officer at the jail, and that the City retaliated against her after she reported the sexual harassment, all in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* This cause is before the Court on the City's Motion for Summary Judgment (Doc # 19), filed September 2, 2008. The Court has carefully considered all submissions in support of and in opposition to the motions and the relevant case law. For the reasons set forth below, the Court finds that the City's Motion for Summary Judgment is due to be GRANTED.

**I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(4) (civil rights). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

**A.     Sexual Harassment**

Dean was hired as a correction officer by the City of Montgomery at the Montgomery Municipal Jail on October 26, 2001. Calvin Knight began working at the Montgomery Municipal Jail as a correction officer a few months after Dean was hired. Knight began to sexually harass Dean about six months to a year after he started working at the jail.

Knight's harassment involved referring to women as "bitches" and "ho's". Knight frequently touched other female employees in Dean's presence. Knight would comment about what kind of underwear female officers were wearing. Knight would make sexually explicit gestures towards female employees, such as putting his hand between his legs, and make sexually explicit comments. Knight would also pick female employees up and place them in his lap, and he would purposefully bump into women to touch their breasts. On one occasion, Knight looked down Dean's shirt. Dean reported this incident to her supervisor, Janice Hopkins. According to Dean, Hopkins was well aware of Knights conduct because Hopkins participated in conversations where Knight's conduct was discussed. Dean alleges that she reported Knight's language and sexual gestures to Hopkins.

On December 27, 2005, Knight approached Dean from behind and put his hands on her knees, then moved his hands to her buttocks and squeezed with his open palm. Other corrections officers witnessed the incident. Dean reported the incident to Hopkins on the day it occurred, and to the assistant warden, M.E. Brantley, the next day. After several weeks, Dean did not feel as though the city was taking any action on her complaint, and she

4

communicated this to W.R. Collins, the jail administrator.

Collins did not take any action on the complaint until he received a letter from Hopkins on January 25, 2006 that referred to Dean's allegations of "sex harassment." Sometime later, Dean was interviewed by an officer from Internal Affairs regarding the harassment. After the investigation was concluded, Knight received a two-day suspension.

At the time of these events, the City had a sexual harassment policy that became effective January 30, 2002. The policy provides for the following procedure to be followed if an employee feels they are being harassed:

> Any employee who believes that he or she is being harassed should report it immediately in writing or verbally to his/her employer. If the complaint is made verbally, the complainant should make and maintain a written account detailing the date of the incident(s), what was said or done, and the names of all witnesses. The complainant shall make the report to his or her
>
> (1)   immediate supervisor;
>
> (2)   department/division head (or designee); or
>
> (3)   the Mayor's Office[; or]
>
> (4)   Personnel Director.

Dean attended a sexual harassment training seminar on February 8, 2002 where she received a copy of the policy.

**B.     Retaliation**

On January 9, 2006, twelve days after reporting the fondling incident, Dean received a counseling form indicating she had violated the city's sick leave policy for sick leave taken

on December 18 and 20, 2005.  Dean had used the sick leave because her son was receiving surgery for scoliosis.[1]

On June 26, 2006, Dean filed a claim with the EEOC alleging sexual harassment and retaliation.

From July 9 to August 3, 2006, Dean served a twenty-day suspension for an incident that had occurred more than four months prior.  On March 7, 2006, Dean fell while she was at work, but at the time did not feel she was injured.  On March 13, 2006, Dean felt the fall at work had irritated a cyst on her leg, so she told her supervisor about the fall and requested sick leave to go to the doctor to check the cyst.  Dean was told the suspension was for violating the city's policy requiring employees to timely report any on-the-job injury on the day the injury occurred and for failing to provide a doctor's excuse regarding the nature of injury to her leg when asked to do so.  While the suspension began on July 9, thirteen days after Dean filed her EEOC claim, the suspension was recommended on April 24, 2006, the hearing occurred on May 3, 2006, and the suspension was ultimately approved on June 20, 2006.

---

[1] Dean alleges in her affidavit and her brief that she received a twenty-day suspension for this incident.  However, the City disputes this fact and argues that Dean only received "counseling" for this incident, but no suspension.  The evidence presented to this Court *by the plaintiff herself* does not support a finding that she received a suspension for this incident.  The counseling form does not mention any recommendation of suspension.  Moreover, under the City's progressive discipline policy, "counseling" is a corrective response the City takes in lieu of suspension.  Accordingly, this Court finds that there was no suspension as a result of the January 9, 2006 counseling.

On July 13, 2006, while Dean was suspended, she received a letter from Collins informing her that she was being transferred from second shift to third shift. Third shift operates from 10:30 p.m. to 7:00 a.m. The letter stated that the decision was based in part on her sexual harassment litigation against the second shift supervisor, the assistant warden, and Knight, but noted that "[t]o prevent the perception of retaliation, be aware that this move is in the best interest for you and the jail." On July 20, 2006, Dean sent a letter to Collins indicating that she couldn't work the third shift because her husband worked nights and she had a toddler. Dean was transferred to the third shift, and on July 24, 2007, she amended her EEOC charge to include a claim of retaliation. The City then transferred Dean back to the second shift.

On or about August 7, 2006, Dean was five months pregnant and requested sick leave pursuant to her doctor's advice due to complications with her pregnancy medication. Dean also requested new uniforms because her pregnancy had caused her to outgrow her old uniform. Dean went to Azar's Uniforms to obtain her new uniform, but the sales clerk, Kelly Sampley, told Dean that while the city would pay for the uniforms, Dean would have to pay for the insert that is used when an officer becomes pregnant. The city accused Dean of using abusive language to the Azar employees and for violating sick leave policy. A hearing was held on November 20, 2006 regarding these charges. Sampley testified that Dean did not raise her voice but that Dean "probably" used profanity. Dean's department head, Major C.J. Dixon, recommended that the board terminate Dean. The hearing board dismissed the

7

violation of sick leave policy and recommended a twenty-nine day suspension for the rude behavior. Ultimately, this recommendation was reduced to a five-day suspension, but Dean never served this suspension.

On December 12, 2006, Major Dixon initiated another investigation into whether Dean had cursed at a police officer. Dean was called into Sergeant Wingard's office, who read Dean her *Garrity* rights. When Wingard started to ask questions, Dean said that she wanted to speak with an attorney before answering any questions. Dean was told she could not speak with an attorney. Moreover, Dean was not informed why she was being investigated. Dean refused to answer any questions until she could speak with an attorney. Major Dixon took Dean's ID card and Access card and told her to go home and stop coming to work until further notice.

The charge of using profanity towards a police officer was dismissed. However, the charge of refusing to answer Sergeant Wingard's questions was upheld. Dean was terminated for her refusal to answer questions, which became effective January 23, 2007.

## IV. DISCUSSION

Dean has brought claims against the City for sexual harassment and retaliation under Title VII. The City has moved for summary judgment on all claims. The Court addresses the merits of each claim below.

**A.    Sexual Harassment / Hostile Work Environment**

To prove sexual harassment under Title VII, a plaintiff must show (1) that she belongs

to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists. *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244-45 (11th Cir. 2004). The City has moved for summary judgment on the fifth element, that there is no basis for holding the City vicariously liable for Knight's actions.

### 1. Notice

An employer can not be held vicariously liable for the harassment of a co-worker unless the employer knew (actual notice) or should have known (constructive notice) of the harassment, and the employer failed to take remedial action. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003). Actual notice is established by proof that management knew of the harassment. *Id.* When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established. *Id.* Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it. The burden of proof is on the employee to prove actual or constructive notice. *Id.* at 1257.

There is no dispute that the City had actual notice of at least one fondling incident on December 27, 2005, when Dean reported the incident to her immediate supervisor, Hopkins.

9

However, Dean also alleges that she reported other instances of sexual harassment to Hopkins prior to that incident. The City's sexual harassment policy specifically provides that an employee's immediate supervisor is an appropriate person to report sexual harassment to. However, with respect to putting the City on notice of Knight's conduct prior to December 27, 2005, Dean has not met her burden to show that her communications with Hopkins were sufficient to put the City on notice that Knight's conduct constituted sexual harassment. *See Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1309-10 (11th Cir. 2007) (reporting conduct to representative designated by sexual harassment plan insufficient to put employer on notice where employee did not properly communicate that the conduct was sexual harassment); *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1365 (11th Cir. 1999) (not unreasonable where employer failed to act on alleged complaint when employee did not adequately communicate that conduct of coworker was "a problem about which she was concerned or that required [employer's] immediate attention").

Dean alleges that prior to December 27, 2005, she reported Knight's conduct to Hopkins, including an incident where Knight looked down her shirt. However, Dean does not provide any specific dates or even a time frame in which these alleged conversations occurred. Indeed, the vague allegation "I reported Knight's offensive language and behaviors to my supervisor, Hopkins," particularly without any reference to when these alleged reports took place, is insufficient to meet her burden of proof that she adequately put Hopkins, and therefore the City, on notice that she was being sexually harassed prior to

10

December 27, 2005. *Columbia Palms*, 490 F.3d at 1309-10.

### 2. Immediate and Appropriate Corrective Action

Once the plaintiff has established vicarious liability through either actual or constructive notice, they must also show that the employer failed to take "immediate and appropriate corrective action." *See Watson*, 324 F.3d at 1261; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002).[2]

This Court has found that the City was on notice of Knight's sexually harassing behavior on December 27, 2005. There is no evidence that the City took any action on Dean's complaint until January 25, 2006, when Collins received a letter from Hopkins that referred to Dean's allegations of "sex harassment." At this point, Collins immediately began an investigation, and Dean was interviewed by an officer from Internal Affairs. After the investigation was concluded, Knight received a two-day suspension.

In *Fleming v. Boeing Co.*, 120 F.3d 242, 246-47 (11th Cir. 1997) the Eleventh Circuit found that an employer took "immediate and appropriate corrective action" where the employer was notified of harassment in September 1992. The employer's response was to tell the employee that the offending employee would be spoken with and that she should

---

[2] The Supreme Court decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) only addressed employer liability for the conduct of a supervisor, not the conduct of a co-worker. *See Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ("*Ellerth* and *Faragher* expressed no view on the employer liability standard for co-worker harassment. Nor do we."); *Miller*, 277 F.3d at 1278 (discussing different standards for vicarious liability when harassment is by a supervisor versus a co-worker).

notify the employer if the harassing conduct continued.  In January 1993 the employer was again notified that the harassment was continuing at which point the employer began an investigation that resulted in offending employee's demotion and employee was moved to different supervisor.  *Id.*

Under the circumstances of this case, this Court finds that the City took "immediate and appropriate corrective action."  In *Fleming*, the employer waited four months to begin its investigation, and then only because the employee complained that the harassment had not ceased.  Here, the City started its investigation less than one month after the complaint and Dean has made no allegation that Knight continued to harass her after she reported his conduct on December 27, 2005.[3]  Accordingly, Dean has failed to establish a "hostile work environment" claim by a co-worker and her claim is due to be dismissed.

**B.     Retaliation**

Dean also claims that the City retaliated against her in response to her complaints about sexual harassment.  To establish a claim of retaliation, a plaintiff must prove (1) that she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was some causal relation between the two events.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  Once the plaintiff establishes the elements of a retaliation claim, the employer has an opportunity to articulate a legitimate, nonretaliatory

---

[3]     In her briefs, Dean claimed that there was evidence that Knight continued his harassing behavior after December 27, 2005.  However, the evidence cited by Dean in fact does not support that proposition.

12

reason for the challenged employment action as an affirmative defense to liability. *Id.*  The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct. *Id.*

Dean alleges the following incidents constitute "materially adverse action" for the purpose of establishing her retaliation claim: (1) the counseling form she received on January 9, 2006 for abusing the sick leave policy; (2) the twenty-day suspension she received on June 20, 2006, for failing to timely report her on-the-job injury for which she took sick leave, and for failing to provide a doctor's excuse regarding the injury when asked to do so; (3) the transfer from second to third shift on August 3, 2006; (4) her termination for failing to answer Sergeant Wingard's questions during the investigation into whether Dean had used profanity towards a police officer.[4]

With respect to the January 9, 2006 counseling form, this does not meet the definition of a "materially adverse action" because it is not a "serious and material change in the terms, conditions, or privileges of employment." *See Davis v. Town of Lake Park, Fla.*, 245 F.3d

---

[4] While mentioned in her statement of facts, Dean never addresses, as a basis of her retaliation claim, her five-day suspension recommended as a result of the November 20, 2006 hearing for rude behavior.  Accordingly, Dean has abandoned that as a potential claim. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 972 n.36 (11th Cir. 2008) (claims not defended on summary judgment are abandoned).  The Court notes that the issue would not have changed the outcome because Dean never served the suspension—the City's recommendation of the five-day suspension was still pending when Dean was terminated for a different offense.

1232, 1240 (11th Cir. 2001) (negative job performance memoranda placed in employee's file was not a materially adverse employment action).

Dean also alleges her twenty-day suspension that began on July 9, 2006, was a materially adverse action in retaliation for her June 26, 2006 EEOC claim alleging sexual harassment and retaliation. However, while the twenty-day suspension was not *imposed* until July 9, 2006, the suspension was recommended on April 24, 2006, the hearing occurred on May 3, 2006, and the suspension was approved on June 20, 2006—all *before* Dean filed her EEOC claim. Moreover, Dean has made no allegation that the suspension was imposed as retaliation in anticipation that Dean would file a sexual harassment complaint. Accordingly, the July 9, 2006 suspension can not be causally related to Dean's EEOC claim. *See Goldsmith*, 513 F.3d at 1277 (causality element requires plaintiff to prove adverse action and filing claim were not "wholly unrelated").

In addition, Dean claims that her transfer from second shift to third shift was retaliation for her sexual harassment claims. With respect to transfers, the Eleventh Circuit has held that they are only materially adverse when they are "objectively equivalent, at least to some degree, to demotions." *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005). The Circuit has found transfers to be materially adverse when they result in lower compensation or benefits, *see Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 513 (11th Cir. 2000), and where the new position involved reduced eligibility for salary increases, less responsibility, and more menial tasks, *see Gillis v. Georgia Dep't of*

14

*Corrections*, 400 F.3d 883, 888 (11th Cir. 2005). However, in other circumstances, the Circuit has upheld transferring an employee away from the harasser as an appropriate response. *See, e.g.*, *Columbia Palms*, 490 F.3d at 1312; *Fleming*, 120 F.3d at 248. Dean argues that the transfer was materially adverse in this case because the third-shift involves less desirable hours. Even if less desirable hours could be considered a materially adverse action, the record shows that after Dean complained about the transfer, the City moved her back to the second-shift as she requested. Under these circumstances, the Court finds that Dean's short-term transfer to third shift does not constitute a materially adverse action

The final basis for Dean's retaliation claim is her termination, which became effective January 23, 2007. There is no doubt that termination would be a materially adverse action for the purpose of establishing a *prima facie* case of retaliation. *See, e.g.*, *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1300 (11th Cir. 2007) ("[T]ermination is the ultimate change in the terms and conditions of employement."). However, in order to prove her *prima facie* case of retaliation, she must also prove that the termination had a causal relation with the protected expression, her EEOC claim.

Dean does not put forth any evidence that her termination was caused by her EEOC claim other than the circumstantial evidence of temporal proximity. Dean was terminated on January 23, 2007, which is six months after she filed her EEOC claim. The Eleventh Circuit has held that shorter periods of three to four months are insufficient temporal proximity to establish a causal relationship. *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506

F.3d 1361, 1364 (11th Cir. 2007) (noting that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough," and "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law"). Accordingly, this Court finds that Dean has failed to provide sufficient evidence for a reasonable jury to find that her termination was causally related to any protected expression on her part.

Because Dean has failed to prove a *prima facie* case of retaliation, the City is entitled to summary judgment on Dean's retaliation claim.[5]

### V. CONCLUSION

For the reasons set forth above, it is CONSIDERED and ORDERED that

(1)  Defendant's Motion for Summary Judgment (Doc # 19) be and the same is hereby GRANTED.

(2)  Defendant's Motion to Strike (Doc. # 25) be and the same is hereby DENIED.

(3)  All claims and this case are DISMISSED WITH PREJUDICE.

---

[5] The Court notes that, in addition to the absence of a *prima facie* case, the City has put forth legitimate, non-discriminatory reasons for all of the actions Dean alleges were retaliatory. Nowhere in Dean's brief does she provide any evidence or argument, beyond conclusory allegations, that demonstrates that the non-discriminatory reasons put forth by the City are pretextual. *See, e.g.*, *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer articulates a legitimate, nondiscriminatory reason for its actions, 'the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination.'").

(4) The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this 1st day of October, 2008.

/s/ Ira Dement<br>
SENIOR UNITED STATES DISTRICT JUDGE